IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  Criminal No.  21-97 |
| | ) |
| **DRESHAWN McBROOM** | ) |

<u>**Opinion and Order on Motion to Suppress**</u>

Presently before the Court is Defendant Dreshawn McBroom's Motion to Suppress Physical Evidence and Defendant's Statements and to Schedule a Franks Hearing (ECF No. 32), to which the Government filed a Response (ECF No. 37). The Government agreed that a hearing on the Motion was necessary, which was held on July 28, 2021. ECF No. 50. Following the hearing, the Government filed a Notice of Supplemental Legal Authority (ECF No. 53), to which Mr. McBroom filed a Reply (ECF No. 54). For the reasons that follow, the Motion will be granted.

**I.      Background**

On Friday morning, February 19, 2021, Dreshawn McBroom was operating a rented blue Chrysler Pacifica with a Florida license plate in the Homewood section of the City of Pittsburgh. While traveling near the intersection of Kelly Street and Sterrett Street, Mr. McBroom moved his vehicle from the travel lane to park alongside the curb of the roadway in the 7200 block of Kelly Street. At the same time, City of Pittsburgh Bureau of Police personnel on patrol in Homewood in two unmarked police vehicles observed Mr. McBroom park the Pacifica. Detective Nathan Dettling, Sergeant Harrison Maddox, and Officer Rayna Zola were together in the "lead" car, while Detective Lucas Burdette and Officer Anthony followed in a separate vehicle. The Homewood area is recognized by law enforcement as a high crime area.

At approximately 10:27 am, while traveling westbound in the 7200 block of Kelly Street, Detective Dettling and Sergeant Maddox observed the Chrysler Pacifica fail to use its turn signal while exiting the roadway to park alongside the curb of Kelly Street, in violation of 75 Pa. Cons. Stat. § 3334. Detective Dettling activated the vehicle's emergency lights and siren to effectuate a traffic stop of the Pacifica. Approximately fifteen seconds after the stop was initiated, Detective Nesser and Officer Burdette arrived on the scene to assist.

Upon approaching the vehicle, Detective Dettling, Sergeant Maddox, and Officer Burdette all detected the odor of burning marijuana coming from the Pacifica. Sergeant Maddox also observed a partially burnt marijuana cigar in plain view in the front passenger side door handle pocket. Based upon the presence of the partially burnt marijuana cigar and the odor of marijuana, Mr. McBroom was removed from the vehicle, handcuffed, and searched. Mr. McBroom was found to have on his person four bags of pink ecstasy powder, one blue ecstasy pill, and a digital scale with white residue on it.

The Pacifica was towed to the Pittsburgh Police's Zone 5 station and Detective Burdette applied for a warrant to search the vehicle. The warrant was granted by Magisterial District Judge Ricciardi and the search warrant was executed at approximately 1:00 pm, February 19, 2021. The search uncovered a Taurus Night Court Judge revolver loaded with four .45 caliber Long Colt ammunition and one .410-gauge PDX defender ammunition. Thereafter, Mr. McBroom was indicted on a single count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

Mr. McBroom filed the instant Motion, which contained Mr. McBroom's Affidavit stating that he did activate his turn signal and thus there was no credible basis for law enforcement to believe that Mr. McBroom violated the Pennsylvania Vehicle Code. Because the traffic stop was based solely on the failure to use a turn signal, in violation of the Pennsylvania Vehicle Code, Mr. McBroom asserts there was no valid justification for the traffic stop. Therefore, he argues that all evidence and statements obtained as a result of the traffic stop and subsequent search must be suppressed as the fruits of an illegal search and seizure.

Testifying at the hearing on behalf of the Government were Detective Dettling, Sergeant Maddox, and Detective Burdette. All three testified that they did not see the Pacifica activate its turn signal before pulling over to park, and that the failure to activate a turn signal was the sole reason for the traffic stop. They further testified as to the events that occurred subsequent to the traffic stop.

Testifying on behalf of Mr. McBroom were Erica Votadian, Matthew King, Marie Beasley, Mark Ganley, and Deborah McBroom. The defense testimony and evidence focused on demonstrating that Mr. McBroom did activate his turn signal. In support of this assertion, the defense introduced into evidence three photographs taken by Ms. Votadian, an investigator for the defense, showing three different views of the 7200 block of Kelly Street. Exs. A, B, & C. All three views showed The Homewood Early Learning Hub and Family Center (Early Learning Center) located at 7219 Kelly Street on the same side of the street Mr. McBroom parked the Pacifica.

Ms. Beasley, the director of the Early Learning Center, testified that the Center had contracted with ADT, a security company that provided, in part, video security cameras for the Center. Exhibit B shows an ADT security camera installed on the corner of the Early Learning Center facing Kelly Street towards Sterrett Street. Mr. King, an ADT sales manager who handled ADT's contract with the Early Learning Center, testified that the ADT video monitoring was in place and working on February 19, 2021. Mr. King testified that he provided defense with a portion of the video that was captured on February 19, 2021. Ex. F. The video footage shows the Pacifica's approach towards the camera and the Pacifica's front right-hand turn signal flashing once on and then off, as Mr. McBroom drove his vehicle to park in the parking lane. Ex. F. The video also shows the police vehicle immediately initiating the traffic stop, followed fifteen seconds later by the second police vehicle. Ex. F. A magnified version of the same video footage was also introduced into evidence and played during the hearing. Ex. K. Mr. Ganley, an investigator for the defense, testified as to his preparation of the magnified video.

Deborah McBroom, Mr. McBroom's sister, testified that she rented the Pacifica from Enterprise Rent-A-Car. She testified that she loaned the Pacifica to her brother on February 19, 2021, while she picked up her own vehicle. Ms. McBroom testified that she inspects any vehicle she is about to drive by, in part, turning on each turn signal light and walking around the car to make sure the lights are working. She testified that the turn signals on the Pacifica were working on the morning of February 19, 2021 at approximately 8:00 am, before she left to turn the Pacifica over to her brother. Ms. McBroom also testified that she received an Enterprise itemized statement for repairs of the damage caused to the Pacifica as a result of

the search. Ex. J. Page four of the statement shows an itemization that appears to indicate that right rear tail lamp was not repaired or replaced. Ex. J, at 4.

**II.     Discussion**

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." Heien v. North Carolina, 574 U.S. 54, 60 (2014). "[W]hen an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop" the stop will be deemed reasonable. United States v. Delfin–Colina, 464 F.3d 392, 397 (3d Cir. 2006). "Where reasonable suspicion for the traffic stop is lacking, the evidentiary fruits of the traffic stop must be suppressed." United States v. Lewis, 672 F.3d 232, 237 (3d Cir. 2012) (citing United States v. Johnson, 592 F.3d 442, 447 (3d Cir. 2010)).

The primary question to be addressed at the hearing on the Motion to Suppress was whether Mr. McBroom activated his turn signal, and if so, whether law enforcement observed the turn signal being activated. The Government stated in its post-hearing Notice that the "surveillance video evidence seems to capture the brief utilization of a turn signal from the perspective of the front-end of the vehicle driven by McBroom," but the Government does not concede that the turn signal was sufficiently activated or that it was visible from the rear. ECF No. 53, at 1. The brevity of the signal usage, with only one visible blink cycle, gives rise to a legitimate question of whether such a brief activation, occurring nearly simultaneously with the movement of the car into the parking lane, was seen by the officers. Law

5

enforcement testified that they did not see a signal. Such testimony is credible under the circumstances. The video, which demonstrates that the turn signal was briefly engaged before Mr. McBroom parked his vehicle, is also credible under the circumstances.

Notwithstanding the question of whether the officers saw the signal, the video footage, which the Government had not seen prior to the hearing, prompted the Government to request in its post-hearing Notice that the Court take judicial notice of the Pennsylvania statute addressing the distance a signal must be used prior to turning a vehicle. Id., citing 75 Pa. Cons. Stat. § 3334. The Government argues that the Pennsylvania statute establishes that, even if the turn signal was activated and visible from the rear, it was not activated for a legally sufficient distance before coming to a stop; and therefore, a violation of the traffic code occurred and justified the stop. In response, the defense argued that under applicable Pennsylvania case law construing 75 Pa. Const. Stat. § 3334, a driver is not required to activate his turn signal for any required minimum distance before changing lanes. As discussed below, Pennsylvania law holds that a driver is not required to activate his turn signal before parking alongside a road.

In Commonwealth v. Tillery, 2021 PA Super 53, 249 A.3d 278, 283 (2021), the Superior Court affirmed the Suppression Court's grant of a suppression motion where the purported reason for the traffic stop was that the defendant "pulled into a parking spot without using a turn signal." 2021 PA Super 53, 249 A.3d 278, 283 (2021). Relevant to this case, the Suppression Court interpreted 75 Pa. Cons. Stat. § 3334(a), and determined that

> under the plain words of the statute at issue, a turn signal is required when moving "**from one traffic lane to another [traffic lane]**" or when "**enter[ing]** the traffic stream from a parked position." The statute does not require a turn signal when moving from a traffic lane to a parking position.

6

Id. (quoting Suppression Court Rule 1925(a) Opinion, 2/18/20, at 7 (emphasis in Rule 1925(a) Opinion)). The Tillery Court, in affirming the Suppression Court, concluded that the defendant "was not required under Section 3334(a) to use his turn signal, nor did he violate the Vehicle Code by pulling into a parking spot in front of a supermarket." Id. at 285.

In Commonwealth v. Slattery, the Superior Court addressed section 3334's requirement that a turn signal be activated continuously 100-feet before turning. 139 A.3d 221 (Pa. Super. 2016). In that case, the Trooper "initiated a traffic stop of Slattery's Dodge Durango after he observed the vehicle make a lane change without signaling at least one hundred feet prior to making that lane change. On cross-examination, the trooper testified that "just as [Slattery] started to move over [to the other lane] or just prior to [moving over]" Slattery's blinker was activated." Id. at 223 (quoting N.T. Suppression Hearing, 6/3/15, at 9). The Slattery Court addressed the 100-foot language and held that "the words of the statute are clear that the 100–foot rule applies to a vehicle *turning,* it is silent regarding the length that a signal must be activated prior to changing lanes. Id. at 224 (emphasis in original).

Further, in a recent non-precedential Superior Court decision, Commonwealth v. Burch, the traffic stop at issue concerned the defendant's failure to activate his turn signal prior to parking alongside the *opposite* side of the road. 2021 WL 1828488, *1 (May 7, 2021) (defendant traveled from the "right lane . . . all the way over to the left lane and then park[ed] on the left-hand side of the traffic way[,] without signaling[,] and parked it against the flow of traffic"). Relying on both Tillery and Slattery, the Burch Court concluded that the defendant "was not required to use a turning signal, since he was not turning onto another roadway, see Slattery, supra, as he pulled the Jeep into a parking space. See Tillery, supra." Id. at *4.

7

Pennsylvania law controls the outcome here.  Since Pennsylvania Courts have construed "turning" under the Vehicle Code to mean that a turn signal is not required when a vehicle pulls over to park on the side of the road, Mr. McBroom was not required to activate his turn signal prior to pulling over to park on Kelly Street.  As such, Mr. McBroom did not violate the Pennsylvania Vehicle code or commit a traffic offense when he parked his car.  Therefore, the police officers lacked reasonable suspicion to justify the traffic stop.  Accordingly, the physical evidence and statements of the Defendant obtained as a result of the traffic stop must be suppressed.  Lewis, 672 F.3d at 237.

**III.    Conclusion**

In summary, and for the reasons stated above, Dreshawn McBroom's Motion to Suppress Physical Evidence and Defendant's Statements (ECF No. 32) is GRANTED. Evidence and statements made by the Defendant obtained by law enforcement as a result of the traffic stop of the Chrysler Pacifica on February 19, 2021 shall be suppressed.

IT IS SO ORDERED.

Dated: August 31, 2021

Marilyn J. Horan
United States District Court Judge