IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No.  21-97 |
| | ) |
| **DRESHAWN McBROOM** | ) |

**Opinion on Motion for Reconsideration**

Presently before the Court is the Government's Motion for Reconsideration (ECF No. 56) of this Court's August 31, 2021 Opinion and Order (ECF No. 55) granting Defendant Dreshawn McBroom's Motion to Suppress Physical Evidence (ECF No. 32).  For the reasons stated below, the Court will grant reconsideration, and upon reconsideration vacate the August 31, 2021 Opinion, and deny the Motion to Suppress Physical Evidence.

**I. Background**

The parties are familiar with the factual background, as well as the evidence and testimony presented at the July 28, 2021 hearing on Mr. McBroom's Motion.  In short, on February 19, 2021, Mr. McBroom, driving a rented Chrysler Pacifica, was pulled over by law enforcement for the perceived failure to use a turn signal when moving from the travel lane to the parking lane in apparent violation of 75 Pa. Cons. Stat. § 3334(a).  Mr. McBroom challenged the lawfulness of the traffic stop primarily based on evidence indicating that he did in fact activate his turn signal.  A crucial part of Mr. McBroom's evidence was video surveillance footage showing the Pacifica's front right-hand turn signal flashing once on and then off, as Mr. McBroom drove his vehicle to park in the parking lane.

During closing argument, the Government maintained its position that three Pittsburgh Police Officers observed Mr. McBroom's vehicle pull over to the side of the road without activating his turn signal. With respect to the video footage showing a turn signal being activated, the Government argued that the signal activation was brief and momentary, and that the officers either saw no flash or only a momentary flash inconsistent with a normal turn signal activation, perhaps indicative of a malfunction. Post hearing, the Government supplemented its position that no turn signal was ever activated, by arguing that even if the turn signal was activated, it was not activated for a sufficient distance under Pennsylvania law. In support of its argument, the Government requested that the Court take judicial notice of 75 Pa. Cons.Stat. § 3334(b); the Pennsylvania statute addressing the distance a signal must be used prior to turning a vehicle. This argument was not presented at the hearing by either party and the Government did not request additional briefing, argument, or a new hearing.

The Court honored the request to consider the facts in light of section 3334(b), in addition to considering section 3334(a). Such consideration resulted in the Court applying Pennsylvania court decisions directly relevant to the facts of this case. In the Opinion, the Court concluded that, based upon the March 26, 2021 Superior Court <u>Tillery</u> decision, Pennsylvania law holds that a driver is not required to activate his turn signal before parking alongside a road. <u>Commonwealth v. Tillery</u>, 2021 PA Super 53, 249 A.3d 278 (2021). As such, the defense Motion to Suppress was granted.

The <u>Tillery</u> decision post-dated the February 19, 2021 McBroom traffic stop. As such, the <u>Tillery</u> decision should not have been applied to the suppression analysis in this case. This Court therefore committed a clear error of law. Reconsideration will be granted.

**II. Motion for Reconsideration**

A motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). The primary issue presented by the Government on reconsideration is whether, on February 19, 2021, it would have been an objectively reasonable mistake of law for a Pennsylvania police officer to believe that a turn signal was required before parking alongside a road.[1] Therefore, the request for reconsideration is premised on the need to correct a clear error of law. In the event the Court determines that the officers did not make an objectively reasonable mistake of law, the Government requests reconsideration of suppression of the evidence, arguing that the Court committed a clear error of law in not applying the good faith exception to the exclusionary rule.

In opposition to the Government's argument, Mr. McBroom argues that section 3334 is not ambiguous, and to the extent that it is, any ambiguity has been properly addressed within decisions by Pennsylvania Courts, beginning with the 2016 Pennsylvania Superior

---

[1] The Government requests that the record be reopened to "allow a more thorough examination of the officers to better understand the basis for the officers' knowledge of the Vehicle Code violation in question and their rationale for conducting the traffic stop." Govt. Mot Recons. 9 (ECF No. 56). This is unnecessary in this case as the standard here is an objective one. United States v. Leon, 468 U.S. 897, 919 (1984) ("'evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment'" (quoting United States v. Peltier, 422 U.S. 531, 539 (1975)). The officers have already testified that they pulled Mr. McBroom over because they believed he violated the Vehicle Code by failing to activate his turn signal before parking. The present issue requires the Court to determine whether the officers "may properly be charged with knowledge" that failing to activate a turn signal prior to parking alongside a road was not a violation of the Vehicle Code.

Court decision of Slattery.  Commonwealth v. Slattery, 139 A.3d 221 (Pa. Super. 2016).  Mr. McBroom argues that case law supports the conclusion that it would not be an objectively reasonable mistake of law for a Pennsylvania police officer to believe that a turn signal was required in the facts of this case.

**III. Discussion**

"[W]hen an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop" the stop will be deemed reasonable.  United States v. Delfin–Colina, 464 F.3d 392, 397 (3d Cir. 2006).  In Heien v. North Carolina, the United States Supreme Court concluded that an "officer's error of law was reasonable" where the ambiguous statute at issue had "never been previously construed by North Carolina's appellate courts."  574 U.S. 54 at 67, 68 (2014).  As noted, Pennsylvania Courts have construed parts of 75 Pa. Cons. Stat. § 3334 since 2016.  Upon reconsideration, the Court considers the relevant Pennsylvania case law to determine whether the officer's error of law in this case was reasonable.

    **A.**    **Pennsylvania Law Addressing Section 3334**

Section 3334 states in full as follows**:**

> **(a) General rule.--**Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.
>
> **(b) Signals on turning and starting.--**At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

> **(c) Limitations on use of certain signals.**--The signals required on vehicles by section 3335(b) (relating to signals by hand and arm or signal lamps) shall not be flashed on one side only on a disabled vehicle, flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear, nor be flashed on one side only of a parked vehicle except as may be necessary for compliance with this section.
>
> **(d) Discontinuing turn signals.**--Turn signals shall be discontinued immediately after completing the turn or movement from one traffic lane to another traffic lane.

75 Pa. Cons. Stat. § 3334.

In 2016, the Superior Court addressed section 3334's requirement that a turn signal be activated continuously for 100-feet before turning. Slattery, 139 A.3d 221. The Slattery Court noted that "[w]hile section 3334(a) provides that a person shall not move from a traffic lane to another *or* turn a vehicle without appropriately signaling of his or her [in]tention to turn, if the given vehicle is travelling less than 35 m.p.h., the driver shall appropriately signal 'continuously during not less than the last 100 feet traveled by the vehicle **before turning.**'" Id. at 224 (bold emphasis in original). The Court held that "the words of the statute are clear that the 100–foot rule applies to a vehicle *turning,* it is silent regarding the length that a signal must be activated prior to changing lanes." Id. at 224 (emphasis in original). The Slattery Court interpreted the statute's subsection with respect to the meaning of "turning" and "changing lanes." The Court stated:

> Moreover, the language found throughout the remaining subsections of 3334 is consistent with the interpretation that the term "before turning" means before a vehicle makes a turn onto another roadway, not before a person changes lanes. *See id.* at § 3334(a) ("Upon a roadway no person shall *turn a vehicle or move from one traffic lane to another* ... unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section."); *id.* at § 3334(d) ("Turn signals shall be discontinued immediately after *completing the turn or movement from one traffic lane to another traffic lane.*"). *See* 1

>Pa.C.S.A. § 1921(b) (when terms of statute are clear and unambiguous, they are given effect consistent with plain and common meaning).

Id. (bold and italic emphasis in original).

After Slattery, in July of 2016, the Pennsylvania Superior Court in Kuprij, a non-precedential decision, revisited section 3334 in a case where the defendant was pulled over for failing to activate his turn signal for 100-feet before changing lanes. Commonwealth v. Kuprij, 2016 WL 5348812 (Pa. Commw. Ct. July 16, 2016). Relying on Slattery, the Kuprij Court affirmed the trial court's suppression order, and noted that the "statute is silent as to the length of time that a signal must be activated prior to changing lanes." Kuprij, 2016 WL 5348812, *5. In light of Kuprij, the Government's post-hearing argument, that the officers' stop of Mr. McBroom was objectively reasonable because he did not activate his turn signal for the required 100-foot distance prior to pulling over to the parking lane, lacks merit.

In January 2020, the Superior Court, in Puit, a non-precedential decision, addressed a factual scenario where the defendant, without using a turn signal, left his lane of travel to pull over to park alongside the road. Commonwealth v. Puit, No. 1060 MDA 2019, 2020 WL 211536 (Pa. Super. Ct. Jan. 14, 2020). In Puit, the defendant argued that the Vehicle Code does not require the use of a turn signal when parking. 2020 WL 211536, * 2. He argued that "parking lanes on the side of roads are not 'traffic lanes,' noting that the Vehicle Code and case law do not define the term[, 'traffic lane']." Id. The Puit Court agreed that the "Code does not define the term 'traffic lane'' and affirmed the trial court's denial of the motion to suppress." 2020 WL 211536, *2. The Puit Court relied upon Heien, stating that an "officer's mistake of law is considered objectively reasonable where 'the application of a statute is unclear-however clear it may later become.'" Id. (quoting Heien, 574 U.S. at 66). The Puit

6

Court concluded that "it was objectively reasonable for [the Trooper] to believe that Section 3334(b) requires a driver to signal when he pulls out of the travel lane to park his car." Id.

Further, in Gurung, a September 17, 2020 opinion, the Superior Court revisited section 3334 to address the issue of whether a driver was required to activate his turn signal when moving from one lane of traffic to another. Commonwealth v. Gurung, 239 A.3d 187 (Pa. Super. Ct. 2020). Applying statutory rules of construction, the Gurung Court concluded that the plain language of the statute requires a driver to use a turn signal when moving from one lane of traffic to another. Id. at 192. In particular, the Court noted that section 3334 as a whole supports the conclusion that a turn signal is required, citing section 3334(d)'s requirement that "[t]urn signals shall be discontinued immediately after completing . . . movement from one traffic lane to another traffic lane." Id. The Court reasoned that if "drivers were not required to employ a signal to move from one lane of traffic to another, subsection 3334(d) would be superfluous." Id.

### B. Analysis

The above case law presents the basis upon which this Court must determine whether it was an objectively reasonable mistake of law for the officers to believe that, on February 19, 2021, section 3334 required Mr. McBroom to use a turn signal when pulling over to park alongside the road. The Government focuses on an apparent ambiguity as to what a 'traffic lane' means in the statute. Subsection 3334(a) states that the "no person shall turn a vehicle or move from one *traffic lane to another* or enter the traffic stream from a parked position . . . without giving an appropriate signal in the manner provided in this section." 75 Pa. Cons. Stat. § 3334(a) (emphasis added). The Government contrasts the phrase from section 3334(a),

7

"from one traffic lane to another," with subsection 3334(d), which provides that, "Turn signals shall be discontinued immediately after completing the turn or movement *from one traffic lane to another traffic lane*." 75 Pa. Cons. Stat. § 3334(d) (emphasis added). According to the Government, the phrase in subsection (a), "from one traffic lane to another," is open to a broader interpretation than the phrase in subsection (d), "from one traffic lane to another traffic lane." The Government suggests that a broad interpretation of subsection (a)'s phrase would reasonably include a 'parking lane alongside a travel lane,' whereas subsection (d) would exclude 'parking lanes alongside a travel lane.'

As prior cases have observed, the statute does not define 'traffic lane.' Neither does it define 'parking lane.' Both terms are utilized within section 3334. In addition, that section also uses the term 'another' in section 3334(a), whereas in section 3334(d) the term 'traffic lane' is expressed twice. Further, the statute expressly requires a signal before entry into a traffic stream from a parked position. The undefined terminology injects fair questions for interpretation, at least as of the February 19, 2021 traffic stop of Mr. McBroom.

As discussed above, the 2019 Puit decision noted that the statute did not define 'travel lane.' The Puit decision did not provide any interpretation to clarify that undefined term. The Puit Court concluded:

> As noted by both parties, the Vehicle Code is silent on what constitutes a "traffic lane." However, because the Code requires a driver to signal to other drivers his intention to move out of the flow of traffic, it was objectively reasonable for Trooper Danko to believe that Section 3334(b) requires a driver to signal when he pulls out of the travel lane to park his car.

2020 WL 211536, at *2. This January 14, 2019 Puit decision held that it was objectively reasonable to believe that section 3334 required a turn signal when a vehicle moves out of the

8

travel lane to park alongside the road.  Therefore, this Court concludes that, on February 19, 2021, when the officers conducted the traffic stop of Mr. McBroom, it was objectively reasonable for them to believe that Mr. McBroom was required to activate his turn signal before pulling alongside the road to park.  Heien, 574 U.S. at 66 ("mistakes—whether of fact or of law—must be objectively reasonable").

In addition to determining the objective reasonableness of the officers' belief concerning section 3334, the suppression issue in this case also required credibility assessments in relation to Mr. McBroom's use of his turn signal.  The August 31, 2021 Opinion included the following relevant factual findings:

> The brevity of the signal usage, with only one visible blink cycle, gives rise to a legitimate question of whether such a brief activation, occurring nearly simultaneously with the movement of the car into the parking lane, was seen by the officers.  Law enforcement testified that they did not see a signal.  Such testimony is credible under the circumstances.  The video, which demonstrates that the turn signal was briefly engaged before Mr. McBroom parked his vehicle, is also credible under the circumstances.

ECF No. 55, at 5-6.  Having previously concluded that the officers credibly testified that they failed to see Mr. McBroom activate his turn signal, the officers possessed specific, articulable facts that Mr. McBroom was violating a traffic law and therefore the stop of the vehicle did not violate the Fourth Amendment.  Delfin–Colina, 464 F.3d at 397.

### C.     Good Faith Exception to the Exclusionary Rule

Even if this Court were to have concluded that the officers mistake of law was not objectively reasonable, suppression of the evidence would still not be warranted. The exclusionary "rule's sole purpose, . . . is to deter future Fourth Amendment violations." Davis v. United States, 564 U.S. 229, 236–37, (2011). "[B]ecause some unconstitutional conduct is unlikely to be deterred by the threat of sanctions, exclusion is not a blanket remedy." Virgin Islands v. John, 654 F.3d 412, 417, (3d Cir. 2011). "'To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" United States v. Wright, 777 F.3d 635, 638 (3d Cir. 2015) (quoting Herring v. United States, 555 U.S. 135, 144 (2009)). Here, the officers conducted a traffic stop reasonably believing that a turn signal was required. The officers credibly testified that they did not view any turn signal in use. Their actions were not "deliberate, reckless, or grossly negligent conduct, or [evidence of] recurring or systemic negligence." Herring, 555 U.S. at 144. Such conduct is unlikely to be deterred by the threat of sanctions, and therefore exclusion of the recovered evidence would be unwarranted.

### IV. Conclusion

For the reasons stated above the Court committed a clear error of law. The Government's Motion for Reconsideration is GRANTED. Upon reconsideration, the Court concludes that it was an objectively reasonable mistake of law for the officers to believe that, as of date of Mr. McBroom's traffic stop, Mr. McBroom was required to activate his turn

signal before parking.  Because the officers credibly testified that they did not observe a turn signal, there was no Fourth Amendment violation.  Accordingly, the Court VACATES its August 31, 2021 Opinion insofar as it is inconsistent with the analysis provided herein.  IT IS FURTHER ORDERED that Dreshawn McBroom's Motion to Suppress Physical Evidence and Defendant's Statements (ECF No. 32) is DENIED.

IT IS SO ORDERED.

Dated: November 8, 2021

_____
Marilyn J. Horan
United States District Court Judge