IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Civil No. 21-97 |
| | ) |
| DRESHAWN McBROOM | ) |

## Opinion

Defendant Dreshawn McBroom is charged in a three-count Superseding Indictment with Possession with Intent to Deliver Quantities of nine different controlled substances[1], in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 1); Possession of a Firearm and Ammunition in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2), and Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count 3). Presently before the Court is the "Motion of Defendant Dreshawn McBroom to Dismiss the Firearm Charges Against Him," in which he argues that § 922(g)(1) is an unconstitutional regulation of the right to possess firearms and ammunition in violation of the Second Amendment to the United States Constitution. Relying on said argument as it applies to the Felon in Possession Charge, Defendant further argues that the charge of carrying a firearm during the commission of a drug trafficking offense, as applied to Mr. McBroom, must also be dismissed as violative of his Second Amendment right to possess a firearm. The government opposes Defendant's Motion. For the reasons set forth below, the Court concludes that § 922(g)(1) is constitutional, thus Defendant's Motion to Dismiss the Firearm Charges Against Him will be denied.

---

[1] The nine controlled substances are: eutylone, fentanyl, heroin, cocaine, cocaine base, 3,4-methylenedioxy PV8, 3,4-methylenedioxy-n-benzycathinone, hydrocodone, and methamphetamine.

**I. Background**

Relevant to the instant Motion, Defendant was charged by Superseding Indictment with possessing a firearm on February 19, 2021, while knowing that he had previously been convicted of crimes punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1)[2]. Section 922(g)(1) of Title 18 provides that "[i]t shall be unlawful for any person-(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition; . . . ." 18 U.S.C. § 922(g)(1).  The Superseding Indictment alleges that Defendant has seven prior qualifying convictions in the Court of Common Pleas of Allegheny County, Pennsylvania, that bar him from possessing firearms under § 922(g)(1).  Five of the convictions occurred on the same date (on or about May 7, 2008) and were prosecuted at three different criminal numbers. At criminal number CP-02-CR-06553-2007, Defendant was convicted of Firearm Not to be Carried Without a License and two charges of Possession with Intent to Manufacture or Deliver a Controlled Substance.  At criminal number CP-02-CR-10751-2007, Defendant was convicted of Possession with Intent to Manufacture or Deliver a Controlled Substance occurring on or about May 7, 2008.  Defendant's final May 7, 2008 conviction is Fleeing or Attempting to Elude Officer at criminal number CP-02-CR-07945-2007.  Defendant's remaining prior qualifying convictions are Aggravated Assault and Possession of a Firearm Prohibited, both occurring on or about August 21, 2013, at criminal number CP-02-CR-09260-2012.

---

[2] For purposes of the Motion to Dismiss, the Court accepts as true the allegations of the Indictment. *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012)(abrogated on other grounds by *Rehaif v. United States*, 139 S.Ct. 2191 (2019)).

The facts supporting the present § 922(g)(1) charge, as well as the § 924(c) charge, arose out of a February 19, 2021 traffic stop of a vehicle Defendant was driving in the Homewood section of Pittsburgh, Pennsylvania.  A partially burnt marijuana cigarette was observed in plain view within the vehicle prompting further investigation.  A search of Mr. McBroom revealed that he had on his person a digital scale with residue on it and ecstasy pills.  A search warrant was obtained, and a search of the vehicle uncovered a Taurus Night Court Judge revolver loaded with four .45 caliber Long Colt ammunition and one .410-gauge PDX defender ammunition.  The loaded firearm was discovered in a drawer beneath the dashboard radio.  Law enforcement also found nine different types of controlled substances; empty unused stamp bags; a digital scale with residue; and cutting agents.  At the time of his arrest, Defendant was on parole for his convictions of Aggravated Assault and Possession of a Firearm Prohibited.

## II.     Arguments

Defendant argues that § 922(g)(1) is unconstitutional as applied to him and he also argues that § 922(g)(1) is unconstitutional on its face.  Defendant primarily supports his arguments by relying on the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, — – U.S. ——, 142 Sup.Ct. 2111 (2022) and the Third Circuit's *en banc* decision in *Range v Attorney General*, 69 F.3d 96 (3d Cir. 2023).

In opposition to Defendant's as applied challenge, the government presents several independent arguments.  First, the government argues that Defendant has failed to demonstrate that he possessed the firearm for self-defense, which is the only legitimate Second Amendment purpose recognized by the Supreme Court.  Second, the government argues that Defendant was legitimately disqualified from possessing firearms under the conditions of Parole he was serving at the time he possessed the firearm. Third, the government argues that Defendant's prior

criminal history places him in a category where the Constitution permits barring him from possessing firearms and ammunition under § 922(g)(1). Finally, the government argues that its historical analysis of governmental restrictions on possessing firearms demonstrates that § 922(g)(1) is consistent with historical restrictions on possession of firearms and ammunition by people who have prior qualifying firearm convictions. Finally, as to Defendant's facial challenge, the government argues that the challenge fails because Defendant cannot show that § 922(g)(1) is unconstitutional in all circumstances.

### III.   *Bruen* and Second Amendment Case Law

The Second Amendment of the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of people to keep and bear Arms, shall not be infringed." The *Bruen* decision follows the Supreme Court's prior landmark Second Amendment decisions of *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010). In *Heller* and *McDonald*, the Supreme Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 142 S. Ct. at 2122. In *Bruen*, the Supreme Court held, "consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 Sup. Ct. at 2122. The *Bruen* Court held that New York City's requirement that a citizen show "proper cause" to carry a handgun in public violates the Constitution, because it "prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156.

Relevant to the instant Motion to Dismiss, the *Bruen* Court held that the standard for a Second Amendment analysis is as follows: "When the Second Amendment's plain text covers

an individual's conduct, the Constitution presumptively protects the conduct." *Id.* at 2129-30. If a Court determines that the conduct being regulated is presumptively protected by the Second Amendment, then to justify the regulation, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's protection." *Id.* at 2126.

In *Range*, a declaratory judgment proceeding, the *en banc* Third Circuit Court addressed the constitutionality of 18 U.S.C. § 922(g)(1), as applied to the plaintiff, Bryan Range. Section 922(g)(1) barred Mr. Range from possessing firearms, because he had previously "pleaded guilty in the Court of Common Pleas of Lancaster County to one count of making a false statement to obtain food stamps in violation of Pennsylvania law." *Range*, 69 F.4th at 98 (*citing* See 62 Pa. Stat. Ann. § 481(a)). Range sought "a declaration that § 922(g)(1) violates the Second Amendment as applied to him" and an "injunction prohibiting the law's enforcement against him." *Id.* at 99. "Range assert[ed] that but for § 922(g)(1), he would 'for sure' purchase another deer-hunting rifle and 'maybe a shotgun' for self-defense at home." *Id.*

The *Range* Court applied *Bruen* to determine whether § 922(g)(1) was constitutional as applied to Bryan Range. First, the Court concluded that "*Heller* and its progeny lead us to conclude that Bryan Range remains among 'the people'[protected by the Second Amendment] despite his 1995 false statement conviction." *Range*, 69 F.4th at 103. Next, the *Range* Court found that "'the Constitution presumptively protects" Bryan Range's proposed conduct, "to possess a rifle to hunt and a shotgun to defend himself at home." *Id.* (quoting *Bruen*, 142 S. Ct. at 2126). Therefore, the burden shifted to the government to "'affirmatively prove that its

5

firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* at 101 (quoting *Bruen* 142 S. Ct. at 2127). After reviewing the government's historical evidence and arguments, the *Range* Court concluded that "that the Government has not shown that the Nation's historical tradition of firearms regulation supports depriving Range of his Second Amendment right to possess a firearm." *Id.* at 106 (citing *Bruen*, 142 S. Ct. at 2126). The *Range* Court succinctly summarized its holding, stating that, "[b]ecause the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id.* The Court described its decision as "narrow," addressing the constitutionality of § 922(g)(1) only as applied to Bryan Range. *Id.*

## IV. Discussion

### A. As Applied Challenge

An as applied challenge contends that a law's "application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (citation omitted). In light of the Range decision, the government concedes that Defendant is one of the "people" protected by the Second Amendment despite having a prior qualifying conviction. Next, the Court determines whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 142 S.Ct. at 2129-30. If the plain text does not cover the person's conduct, then the regulation at issue does not violate the Second Amendment. However, if the plain text does cover such conduct, then "the Constitution presumptively protects the conduct" and the burden shifts to the government to justify the constitutionality of the firearm regulation. *Id.*

### 1. Defendant's Conduct is Not Protected

Defendant contends that he desires to possess firearms as protected by the Second Amendment's guarantee of the right of the people to keep and bear arms. However, the Defendant's actual conduct is the focus for analysis, and his conduct at issue is not protected under the plain text of the Second Amendment. Here, on February 21, 2021, Defendant possessed a firearm and ammunition in the front seat of the vehicle he was driving, which also contained nine types of illegal controlled substances and drug paraphernalia. The presence of the loaded firearm and controlled substances indicated that Defendant was engaged in the distribution of illegal drugs. Defendant's conduct of possessing a firearm within arm's reach in a vehicle with drugs and drug paraphernalia establishes him as a person who is dangerous to the safety of the public and is disruptive to the orderly functioning of society. Under these circumstances, the Second Amendment's plain text does not protect the Defendant's conduct. *Bruen*, 142 Sup. Ct. at 2129-30. Therefore, Defendant's conduct is not presumptively protected by the Constitution. No further analysis in necessary. The government has no further burden to justify the § 922(g)(1) firearm regulation as applied to Defendant. Accordingly, because Defendant's conduct was not protected by the plain text of the Second Amendment, his as applied challenge fails.

### 2. Even if Defendant's Conduct was Protected, the Government Demonstrates Sufficient Historical Analogues

Even if Defendant's conduct were protected by the Second Amendment, which it was not, his as applied challenge still fails, because as applied to the Defendant, § 922(g)(1) corresponds with "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. As explained in *Bruen*, the government need only "identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 2133

(emphasis in original). "'To be compatible with the Second Amendment, regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue." *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S.Ct. at 2131). "[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Bruen*, 142 S.Ct. at 2133. "[T]wo metrics that make historical and modern firearms regulations similar enough, are 'how and why the regulations burden a law-abiding citizen's right to armed self-defense.'" *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S.Ct. at 2131).

With such guidelines in mind, the Court concludes that the government has presented sufficiently similar historical analogues to § 922(g)(1). The relevant historical analogous firearm regulations cited by the government disarmed persons deemed to be dangerous, not trusted to obey the law, or who were disruptive, or a threat, to society. Historically, the right to keep and bear arms was lawfully taken away from persons who "pose a threat to the orderly functioning of society." *Range*, 69 F.4th at 110. The purpose of such historical firearm regulations was to ensure the orderly functioning of society and to protect the public.

The regulated conduct, purposes and objectives of the historical firearm analogues, when compared to the regulated conduct, purposes and objectives of § 922(g)(1) as applied to Defendant, clearly reflect requisite similarity to establish § 922(g)(1)'s constitutional compliance with the Second Amendment. Defendant's relevant 922(g)(1) qualifying firearm convictions, two firearm felonies, three drug distribution felonies, one aggravated assault felony, and one fleeing from, or attempting to elude, an officer felony, clearly demonstrate that he is a threat to public safety and to the orderly functioning of society. Further, the Defendant's present offense conduct of possessing a loaded firearm within arm's reach, along with multiple controlled substances and drug paraphernalia, sufficiently places him in the category of persons who were

historically properly disarmed to ensure the orderly functioning of society and to protect the public.  Section 922(g)(1), as applied to Defendant, "is consistent with this Nation's historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at 2126.  As such, § 922(g)(1) is constitutional as applied to Defendant.  Defendant's as applied challenge to § 922(g)(1) fails.

### B.  Facial Challenge

Defendant next argues that § 922(g)(1) is unconstitutional on its face.  "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case."  *Marcavage*, 609 F.3d at 273 (citation omitted).  "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'"  *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (*en banc*) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

The government argues that the facial challenge fails, because the Defendant is unable to show that § 922(g)(1) is unconstitutional in *all* circumstances.  The Court agrees.  Initially, the above decision, finding that § 922(g)(1) is constitutional as applied to the Defendant, establishes that § 922(g)(1) is not unconstitutional in all cases. While Defendant relies upon the *Range* Court's finding, that § 922(g)(1) was unconstitutional as applied to Bryan Range, such holding was expressly narrow and limited to Bryan Range's prior fraud conviction and his proposed prospective protected firearm conduct.  The *Range* Court did not find or even suggest that § 922(g)(1) is unconstitutional in all cases.  Accordingly, Defendant's facial challenge to § 922(g)(1) fails.

## V. Conclusion

For the reasons explained above, the Motion of Defendant Dreshawn McBroom to Dismiss the Firearm Charges Against Him (ECF No. 129) will be denied. An appropriate Order will be entered.

Dated: <u>November 2, 2023</u>

                                                      Marilyn J. Horan
                                                     United States District Court Judge