## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  21-97 |
| | ) | |
| DRESHAWN MCBROOM | ) | |

### Opinion and Order

Presently before the Court are Defendant Dreshawn McBroom's Motion to Dismiss Charges, Quash Indictment with Prejudice and/or Bar a Second Trial and Supplemental Motion to Dismiss Charges, Quash Indictment with Prejudice and/or Bar a Retrial.  ECF Nos. 238, 252.  The government has filed a Response to the Motion, to which Mr. McBroom has filed a Reply.  ECF Nos. 253, 254.

### I.      Background

A trial in this matter took place on July 16, 2024, July 17, 2024, July 18, 2024, and July 19, 2024.  The trial ended when the Court granted defense counsel's oral motion for a mistrial, which occurred during the course of jury deliberations.  The facts related to the mistrial are brief.  After the final charge was given to the jury, and the jury was removed to the jury room for deliberations, government counsel, defense counsel, and the Court's deputy clerk, gathered, and reviewed for accuracy, the trial exhibits to be sent to the jury.  The court's deputy clerk delivered the exhibits to the jury for the juror's use during deliberations.

At 12:38 p.m., the jury sent a note to the Court, which read: "What is the procedure for a hung jury."  ECF No. 243.  The Court instructed with Third Circuit Model Criminal Jury Instruction 9.05, to continue to deliberate.  Tr. July 19, 2024, at 9-10, ECF No. 253-1.  At 1:52 p.m., the jury sent a second note to the Court, which read: "After careful consideration and reconsideration, we are at a complete impasse. After several polls, no one is intending to

change their position." ECF No. 245. Defense counsel immediately moved for a mistrial. Tr. 11:8. Government counsel opposed the motion, arguing that the deliberations had only been going on for about four hours. Tr. 11:9-12. The Court agreed and denied the motion for a mistrial as premature. Tr. 11:23-24. The jury was again instructed to continue their deliberations, using Instruction 9.05. Tr. 12-13.

At 3:23 p.m. the jury sent a note to the Court, which read: "Are all videos on the computer available for our viewing?? Particularly the ones that weren't presented to us at trial." ECF No. 246. From the question it was discovered that, within the exhibits sent to the jury, was a government thumb drive that contained several video exhibits. The thumb drive included a video relating to the investigation of the case, marked as Government Exhibit 71, which had not been shown to the jury nor entered into evidence.

Before learning whether the jury had viewed Exhibit 71, defense counsel moved for a mistrial based on the jury having been given evidence that was never introduced or discussed during trial. Tr. 16:10-13. The government argued that it needed to know whether any juror had viewed the exhibit before it could respond to the motion. Tr. 16:14-17. In response, defense counsel argued that the Court and the parties should presume that the jury had viewed the video, because the exhibit had been given to them. Tr. 16:18-22. Instead, the Court tentatively decided to send a question to the jury asking them if anyone had viewed the exhibit. Tr. 16:3-5, 12. The Court noted that the jury was provided with the official list of admitted exhibits and that it was possible that when they discovered Exhibit 71, they cross-referenced Exhibit 71 with the exhibit numbers on the list and realized it was not on the

official exhibit list.  Tr. 16:4-12.  At that point, defense counsel again moved for a mistrial,

stating:

> I'd like to know why the jury was given something that wasn't admitted into
> evidence because there may have been other marked exhibits sent to them that
> they have looked at other than this video without perhaps even realizing
> whether those items had been admitted or not. Nothing should have gone to the
> jury that was not admitted into evidence. I must again ask for a mistrial.

Tr. 16:15-21.  The government again stated that it needed to learn whether the jury had

viewed the video.  Tr. 16:23-25.  The government also explained that "the exhibits, especially

the thumb drive, were burned in anticipation that all those exhibits would be entered. There

was an error in the fact that those exhibits were not removed from that specific drive prior to it

going back to the jury. So it was not an intentional act that was done on the part of the

government."  Tr. 16:25-17:1-6.

The Court took the defense motion for a mistrial under advisement and sent the

following question to the jury: ""Has the video, #71, been viewed by the jury?"  Tr. 18:1-6.

The jury's response to the question was:  "All videos including the video with Mr.

McBroom's sister being interviewed at the police station[,] by one or more of the jurors, have

been viewed."  ECF No. 246.  After learning that Exhibit 71 had been viewed by the jury,

defense counsel moved for a mistrial.  Tr. 18:25.  The government continued to oppose the

defense motion for a mistrial, suggesting instead that the Court give a curative instruction.  Tr.

19:2-15.  The Court disagreed with the government and granted the defense motion for a

mistrial.  Tr. 20:3-8.  After the defense motion for a mistrial had been granted, the government

had completed its review of the thumb drive and confirmed that it did not contain any items

that were not entered into evidence, other than the non-admitted video, Exhibit 71.  Tr. 20:19-
23.

The Court set September 16, 2024, as the date for a retrial in this matter.  Tr. 21:20-21.
Thereafter, defense counsel filed the present Motion, seeking to bar a second trial.

II.      **Applicable Law**

The Double Jeopardy Clause of the United States Constitution prohibits any person
from being "twice put in jeopardy of life or limb" based on the same offense.  U.S. Const.
amend. V.  Generally, when the defense moves for, and obtains, a mistrial, "'[n]o interest
protected by the Double Jeopardy Clause is invaded.'"  *United States v. Rivera*, 384 F.3d 49,
54 (3d Cir.2004) (quoting *United States v. Scott*, 437 U.S. 82, 100, 65 (1978)).  Therefore,
proceeding to a second trial after a defendant obtains a mistrial typically does not offend the
Double Jeopardy Clause.  *United States v. Sandoval*, 480 F. App'x 692, 694 (3d Cir. 2012).

The Supreme Court, however, has stated that "where the defendant moves for a
mistrial, there is a narrow exception to the rule that the Double Jeopardy Clause is no bar to
retrial."  *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982).  In *Kennedy*, the Supreme Court
explained that the exception concerns analysis of prosecutorial intent:  "[o]nly where the
governmental conduct in question is intended to 'goad' the defendant into moving for a
mistrial may a defendant raise the bar of double jeopardy."  *Id.* at 676.  The Supreme Court
specifically held "that the circumstances under which such a defendant may invoke the bar of
double jeopardy in a second effort to try him are limited to those cases in which the conduct
giving rise to the successful motion for a mistrial was intended to provoke the defendant into
moving for a mistrial."  *Id.* at 679.  The Third Circuit explains that, in such situations,

"application of the double jeopardy bar is dependent on a showing of the prosecutor's subjective intent to cause a mistrial in order to retry the case." *United States v. Williams*, 472 F.3d 81, 85–86 (3d Cir.2007). This is a "standard that examines the intent of the prosecutor," and "calls for the court to make a finding of fact [by] [i]nferring the existence or nonexistence of intent from objective facts and circumstances." *Kennedy*, 456 U.S. at 675.

### III.   Discussion

Mr. McBroom argues that a second trial should be barred because the government's conduct in this case fits within the exception identified by the Supreme Court in *Kennedy*. Alternatively, he argues that the Court should reconsider the *Kennedy* subjective intent standard and apply an "impermissible overreaching" standard, as advocated by four Justices in *Kennedy*.

### A.   Subjective Intent to Cause a Motion for a Mistrial

The Third Circuit suggests the following three factors for Courts to consider when evaluating whether the prosecution had the requisite subjective intent: whether the record evidence indicates that the prosecutor believed the defendant would be acquitted; whether the prosecution would benefit from a second trial; and whether the prosecutor offered a credible justification for his actions. *United States v. Barnard*, 318 F. App'x 143, 145 (3d Cir. 2009); *United States v. Liburd*, 405 Fed. App'x. 670, 671 (3d Cir. 2010).

### 1.   Belief that Defendant would be Acquitted

Mr. McBroom argues that the government likely believed that the jury would acquit based upon the defense's cross-examination of the government's law enforcement witnesses,

which exposed conduct that may have resulted in an acquittal. However, any unfavorable information elicited upon cross-examination of the police witnesses is counterbalanced by the favorable testimony elicited by the government and the government's overall physical evidence that could have supported a finding of Mr. McBroom's guilt. In addition, every time defense counsel moved for a mistrial, the government registered its opposition. Even when it was learned that the jury had viewed the non-admitted Exhibit 71, the government continued to argue against granting a mistrial. The government's insistence that the jury continue to deliberate weighs heavily against concluding that the government believed the jury would acquit.

### 2.  Government Benefit from a Second Trial

Mr. McBroom contends that the mistrial benefits the government, because a second trial would give the government an opportunity to prepare its witnesses for the past defense cross-examination that undermined and/or discredited the law enforcement witnesses. As the government points out; however, the defense plan for cross-examination provided little surprise. The defense's general strategy was well-known to the government, based on several pretrial pleadings. As a practical matter, having the opportunity to preview an opponent's trial strategy, including the demeanor of witnesses and the evidence to be introduced, provides both sides with some measure of an advantage in a second trial. Here, the defense now concretely knows, from the defense counsel's perspective, the weaknesses in the government's case. The defense also knows, in general, how the government intends to prove the charges against Mr. McBroom. Considering the benefit that might arise to both parties, this factor does not weigh in favor of barring a second trial.

6

### 3.  Justification for Conduct

Finally, the prosecutor offered a credible justification for his actions, which weighs in favor of permitting a second trial.  In moving for a mistrial for the second time in relation to the video evidence, defense counsel stated, "I'd like to know why the jury was given something that wasn't admitted into evidence because there may have been other marked exhibits sent to them."  Tr. 16:15-17.  In response, the government explained that the thumb drive was "burned in anticipation that all those exhibits would be entered. There was an error in the fact that those exhibits were not removed from that specific drive prior to it going back to the jury. So it was not an intentional act that was done on the part of the government."  Tr. 16:25-17:1-6.  The government provided this explanation contemporaneously with the government's opposition to the defense's four motions for a mistrial and prior to a mistrial being declared.  The Court finds the government's explanation credible, and that the government did not intend to provoke or goad the defense into moving for a mistrial.

### 4.  Reckless and/or Grossly Negligent Conduct

The defense also argues that, "[a]ssuming the Government acted inadvertently," subjective intent can be inferred from the government's "highly reckless and grossly negligent" conduct, "which reflects a conscious disregard for expected standards."  Def. Supp. Mot. 11.  The defense appears to argue that the government's failure to properly and completely examine each of its exhibits to ensure that there were no non-admitted exhibits being given to the jury, equates to reckless and/or grossly negligent conduct, from which the government's subjective intent can be inferred.  However, to assume that the government acted inadvertently essentially "ends the inquiry" because, if the government conduct was

inadvertent, it negates any subjective intent to goad the defense into moving for a mistrial.

*United States v. Sandoval*, 480 F. App'x 692, 695 (3d Cir. 2012) (rejecting defense argument

that the prosecutor, assuming she did not set out to cause a mistrial, should be "charged with

the knowledge that a mistrial might or would in fact occur"). The prosecutor cannot, at the

same time, be unaware that he is providing non-admitted evidence to the jury and also be

charged with subjectively intending, *i.e.*, "knowing," that his unintentional conduct might

goad the defense into moving for a mistrial. *Id.* The defense's argument makes sense only if

the prosecutor's conduct was *not* inadvertent, unintentional, or accidental. In that case, the

defense must still show, not only that the prosecutor's conduct was knowing, but also that the

prosecutor subjectively intended to provide non-admitted evidence to the jury in order to

provoke a motion for mistrial. The Court concludes that the record supports that the

submission was completely inadvertent, such that, no inference of subjective improper intent

can be made.

In its Reply, the defense impliedly argues that the government's conduct was not

inadvertent, but rather, it was knowingly intentional. There is no evidence to support such an

accusation; the evidence strongly supports the conclusion that the government's conduct was

inadvertent and unintentional.

The defense further accuses the government of perhaps having placed additional non-

admitted videos, other than Exhibit 71, on the thumb drive. This speculative accusation also

implies that the government lied to the Court when the prosecutor stated that, upon

examination, the thumb drive did not contain any other items that were not entered into

evidence.  Also, and while moving for a mistrial for a third time, defense counsel speculated that "there may have been other marked exhibits sent" to the jury.  Tr. 16:17.

However, as the question was about to be delivered to the jury, the government asked, "[w]hen the answer goes back to the jury, can we take the drive from them so while they continue to deliberate as we work through these issues, they don't inadvertently view something, so we can check it, make sure it's clean so we don't have a secondary problem." Tr. 18:9-13.  Nothing prevented defense counsel from asking the government if he could watch while the thumb drive was reviewed.  Further, if defense counsel believed that there were additional non-admitted videos on the thumb drive, he could have contemporaneously motioned the Court for "a hearing and a record examination of the Government's pretrial prepared thumb drive," as he mentions in his Reply.  Def. Reply 4.  He did not.  Moreover, he did not raise this argument in his first Motion or his Supplemental Motion.

The available evidence supports that there was only one non-admitted exhibit on the thumb drive.  Even if there were more, such would not alter the result – the defense motion for mistrial was granted based on the lone Exhibit 71, and such would not impact this Court's finding that the government error was inadvertent.

### B.  Impermissible Overreaching

Alternatively, Mr. McBroom argues that the Court should "reconsider" the *Kennedy* subjective intent test and instead apply an "impermissible overreaching" standard advocated by four concurring Justices in *Kennedy*.  Def. Supp. Mot. 12-13.  In support of the defense argument to persuade the Court to reconsider the *Kennedy* standard, Mr. McBroom argues that said standard "only represents the view of a Court plurality" and that its precedential weight is

"very limited." *Id.* 12.  Mr. McBroom asserts that, to meet the "overreaching" standard, "'[i]t is sufficient that the court is persuaded that egregious prosecutorial misconduct has rendered unmeaningful the defendant's choice to continue or to abort the proceeding.'" *Id.* 13 (quoting *Kennedy*, 456 U.S. at 689 (Stevens, J. concurring)).  He characterizes the government's conduct in this case, which resulted in the "jury's possession and review of matter not introduced into the record," as reckless and grossly negligent conduct that "fall[s] well outside of any measure of acceptable conduct."  Def. Supp. Mot. 13.  The Court declines to ignore the "subjective intent" *Kennedy* standard, as the Court is bound to follow Supreme Court precedent.  Mr. McBroom implicitly acknowledges that the *Kennedy* standard is precedential, by advocating that the Court reconsider it.  Even if the Court were convinced that the current *Kennedy* standard was not precedential, the Court is still bound by Third Circuit precedent, which directs courts to analyze Double Jeopardy Clause cases, in the face of a defense motion for mistrial, under the subjective intent standard of *Kennedy*.  In *United States v. Brown*, the Third Circuit stated that "the Supreme Court held that the Double Jeopardy Clause forbids retrial when 'the conduct giving rise to the successful motion for a mistrial was *intended* to provoke the defendant into moving for a mistrial.'"  994 F.3d 147, 152 (3d Cir. 2021) (emphasis added) (quoting *Kennedy*, 456 U.S. at 679)).  In direct contrast to Mr. McBroom's argument, that the Court should objectively focus on the prosecutor's reckless and/or grossly negligent conduct instead of on the subjective intent of the prosecutor, the Court in *Brown* unequivocally stated that "[t]he prosecution's intent is key."  994 F.3d at 153; *see also United States v. Williams*, 472 F.3d 81, 85 (3d Cir. 2007) (emphasizing *Kennedy's* focus on the government's intent); *United States v. Curtis*, 683 F.2d 769, 776 (3d Cir. 1982) (prosecutorial

10

overreaching in the form of a prosecutor's intent to impermissibly prejudice defendant, as opposed to a subjective intent to provoke a mistrial, "is no obstacle to a second trial following the granting of a mistrial motion").  Therefore, bound by Supreme Court and Third Circuit precedent, the Court declines to reconsider the *Kennedy* subjective intent standard. Regardless, even if the Court were to apply the standard urged by the defense, the result in this case would be the same.  The objective facts and evidence demonstrate that the prosecution's conduct was accidental; it does not rise to the level of recklessness and/or gross negligence.  Thus, the defense Motion will be denied.

**IV.    Conclusion**

The record evidence does not support a conclusion that the prosecutor intended to provoke a mistrial as a result of the inadvertent provision of non-admitted evience.  *United States v. Parker*, No. 21-3078, 2023 WL 4117474, at *3 (3d Cir. June 22, 2023). Accordingly, a retrial is not barred under the Double Jeopardy Clause.

Accordingly, it is hereby ORDERED that Defendant's Motion to Dismiss Charges, Quash Indictment with Prejudice and/or Bar a Second Trial and his Supplemental Motion to Dismiss Charges, Quash Indictment with Prejudice and/or Bar a Retrial, ECF Nos. 238, 252, are DENIED.

IT IS SO ORDERED.

Dated: <u>September 3, 2024</u>

Marilyn J. Horan
United States District Court Judge

11